IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA HUGHES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONWIDE BANK,<br><br>        Defendant | CIVIL ACTION<br><br>No. |

## CLASS ACTION COMPLAINT

1. Representative Plaintiff Joshua Hughes, on behalf of himself and others similarly situated, hereby files this Class Action Complaint against Nationwide Bank, and alleges as follows:

### I. INTRODUCTION

2. When a secured lender exercises its self-help remedy to repossess a motor vehicle from a consumer debtor, the creditor must send strictly-specified written notices to such debtor that comply with the Uniform Commercial Code ("UCC"). This consumer protection class action seeks equitable, declaratory, and monetary relief to redress Defendant's pattern and practice to fail to provide commercially reasonable post-repossession consumer disclosure notices. Such disclosures failed to state the intended method of disposition (public or private sale) and, if public, the time and place of such disposition; nor to state that the consumer was entitled to an accounting of unpaid indebtedness.

### II. PARTIES

3. Representative Plaintiff Joshua Hughes is an individual residing at 9 W Northview Ave, New Castle, Pennsylvania 16105.

4. Defendant Nationwide Bank ("Bank") is a federally chartered savings association, with its principal office located at One Nationwide Plaza, Columbus, Ohio 43215.

5.    At all relevant times, the Bank was (or is) the assignee, holder, and/or servicing agent of loans secured by Plaintiff's and putative class members' vehicles when each of the subject statutory consumer disclosure notices were sent (or caused to be sent).

### III.  FACTS

6.    On April 26, 2012, Plaintiff Joshua Hughes purchased a 2012 Ford Mustang, VIN# 1ZVBP8AM5C5260256, from Phil Fitts Ford Inc. in New Castle, Pennsylvania.

7.    Plaintiff initially financed the purchase of this vehicle through First National Bank of Pennsylvania.

8.    Then, on July 9, 2013, Plaintiff refinanced his vehicle through the Bank.

9.    At that time, he executed a Promissory Note in favor of the Bank. **Exhibit A**.

10.   Plaintiff also entered into a Consumer Security Agreement with the Bank. **Exhibit B**.

11.   On or about September 17, 2015, the Bank, as secured creditor, or its agents, repossessed Plaintiff's vehicle.

12.   On or about September 17, 2015, the Bank or its agents sent or caused to be sent a four-page computer-generated form letter addressed to Plaintiff stating, *inter alia*, as follows:

> We plan to sell the collateral associated with the account referenced above because you failed to make payments or otherwise broke promises in our agreement.

A copy of this document (hereafter "Notice of Repossession") is attached as **Exhibit C**.

13.   The Notice of Repossession sent to Plaintiff failed to comply with the UCC requirements for such post-repossession consumer disclosure notices.

14.   The Bank never sent the Plaintiff an Explanation of Calculation of Surplus or Deficiency (hereafter "Post-Sale Notice") after it sold the repossessed vehicle.

2

15. The failure to send a Post-Sale Notice is a violation of the UCC.

## IV. JURISDICTION AND VENUE

16. Diversity jurisdiction exists under 28 USC §1332(a) and as the named Plaintiff is a resident of Pennsylvania and the Defendant is a corporation with a principal place of business in Ohio and the amount in controversy exceeds $75,000.

17. In the alternative and/or in addition, jurisdiction exists under 28 USC §1332(d) "CAFA" because at least one class member is a citizen of a different state than Defendant, and the matter in controversy exceeds the sum or value of $5,000,000.

18. Venue is proper because Plaintiff resides in this District, Defendant does business in this District, and the vehicle was repossessed in this District

## V. STATUTORY REQUIREMENTS FOR REPOSSESSION-RELATED NOTICES

19. The UCC of the state each class member resides in at the time of the filing of this Complaint is the governing law.

20. Section 9610(b)[1] of the UCC proscribes the selling of collateral (such as a motor vehicle) if the sale is not commercially reasonable, providing:

> (B) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings....

21. The Official Comments to the UCC are entitled to considerable weight when construing the statute.

22. Comment 2 to Section 9614 declares:

---

[1] Plaintiff refers to Pennsylvania citations in this Complaint because his claims fall under the Pennsylvania UCC. Because this is a multi-state class action, references to Pennsylvania UCC statutes shall be deemed to refer to the equivalent statutes in other states which have adopted the UCC and have nearly identical statutes as those plead in this action (generally, a number or hyphen may be modified; however, the content of the cause of action is the same as Pennsylvania).

3

Paragraph (1) sets forth the information required for a reasonable notification in a consumer-goods transaction. A notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law.

## VI. DEFENDANTS' POST-REPOSSESSION CONSUMER DISCLOSURE NOTICES DO NOT COMPLY WITH THE UCC

### A. Notice of Repossession Violations

23. Section 9611 of the UCC requires the Bank to provide a "reasonable authenticated notification of disposition," i.e. a Notice of Repossession. This post-repossession consumer disclosure notice must be sent to the debtor and must contain particular information about such items as the repossession, the amounts allegedly owed, and the method of intended disposition (i.e., a public or private auction) for the sale of the collateral.

24. The mandatory disclosure is set forth in Section 9614.

25. The Notices of Repossession (**Exhibit C**) that the Bank sent to all class members in connection with the repossession of their respective vehicles similarly did not comply with the requirements of Section 9614 and, therefore, was not commercially reasonable including but not limited to the following ways, by:

(a) Failing to conspicuously state the intended method of disposition (whether the vehicle will be sold at a public or private sale), and, in the case of a public sale, the time and place of the disposition, as required by 9614(A)(1)(a) through incorporation of 9613(A)(1)(c) and (e); and,

(b) Failing to conspicuously state that Plaintiff was entitled to an accounting of the unpaid indebtedness and the charge for such accounting, as required by 9614(A)(1)(a) through incorporation of 9613(A)(1)(d); and,

4

26. Section 9625(C)(2) provides that a consumer debtor such as Plaintiff and each member of the class can recover minimum statutory damages from a secured party such as the Bank, for its "fail[ure] to comply with this chapter."

27. By failing to comply with the UCC as set forth above, the Bank is liable to Plaintiff and to all members of the class for minimum statutory compensatory damages. 13 Pa. C.S. §9625.

### B. Post-Sale Notice Violations

28. Section 9616(B) of the UCC provides that in a consumer goods transaction such as Plaintiff's transaction and the transactions of all class members, the secured party is required to send to the debtor a Post-Sale Notice after it has disposed of the debtor's repossessed vehicle, to inform the debtor, *inter alia*, of the proceeds of the sale of the vehicle and the resulting surplus or deficiency.

29. As set forth above, the Bank either failed to send a Post-Sale Notice to Plaintiff and all class members as required by 9616(B). Alternatively, the Bank sent a Post-Sale Notice which did not contain all of the mandatory information or in the proper order as required by Section 9616(A) and (C).

30. Section 9625(C)(2) provides that a consumer debtor such as Plaintiff and each member of the class can recover minimum statutory damages from a secured party such as the Bank, for its fail[ure] to comply with Sections 9611 and 9616.

31. By failing to comply with the provisions of Section 9616 as set forth above, the Bank is liable to Plaintiff and to all members of the class for statutory damages.

32. The Bank has engaged in a pattern and practice of non-compliance with the UCC by failing to send the required Post-Sale Notices and Notice of Repossessions.

## VII. DAMAGES

33. Section 9625(C)(2) of the UCC provides for damages for a secured party's failure to follow the proper procedures in connection with the repossession of a motor vehicle. This includes sending non-compliant post-repossession consumer disclosure notices.

34. Generally, this provision allows a consumer debtor such as Plaintiff (and members of the class) to recover minimum damages of not less than the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed). These figures are readily determinable simply by a review of the loan document for each class member.

35. Official Comment Number 4 to Section 9625 makes clear that the statutory damages set forth in that section do not depend in the existence of actual damages.

> **4. Minimum Damages in Consumer-Goods Transactions.**
> Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.

36. Plaintiff makes claim for the greater of actual and statutory damages.

37. Actual damages may entail, *inter alia,* the following:

   (a) The amounts collected by the Bank for unlawful or inflated fees and expenses;

   (b) Loan payments collected from class members after they had redeemed their vehicles;

   (c) Payments made by class members towards invalid deficiencies;

   (d) Expenses incurred in retrieving their redeemed vehicle from a county other than one statutorily and contractually required; and/or,

6

(e) Except in cases of redemption and reinstatement, the value of the vehicles which were invalidly sold notwithstanding that Section 9-610 had been violated.

38. Statutory damages are not in the nature of the repayment of principal or interest already paid by Plaintiffs and Class Members. Class Members may choose damages pursuant to 9625(c)(2) or (b) and may also be entitled to additional damages pursuant to 9625(e).

39. A secured party who fails to send a statutorily compliant Post-Sale Notice is liable for $500[2] in statutory damages if its failure to comply was part of a pattern, or consistent with a practice, of noncompliance (which is alleged herein). *See* Section 9625(E)(5) of the UCC.

## IX. CLASS ALLEGATIONS

40. Plaintiff proposes to define the "Main Class" as all persons:

(a) who financed or refinanced a motor vehicle primarily for personal, family or household use through the Bank; and,

(b) from whom the Bank, as secured party, repossessed the vehicle or ordered it to be repossessed; and,

(c) who, at the time the Bank or its agent, sent a Notice of Repossession to its borrower(s), who resided in a state that adopted the sections of the UCC which is the same or substantially similar in content to 13 Pa. C.S. §§9610, 9611, 9613, 9614, and 9625; and,

(d) who were not sent a Notice of Repossession clearly and conspicuously stated:

  i. the intended method of disposition (whether the vehicle would be sold at a public or private sale) and, in the case of a public sale, the time and place of the location of the disposition; or,

  ii. that the recipient was entitled to an accounting of the unpaid indebtedness and the charge for such accounting;

---

[2] This amount may vary in a few states.

41. Plaintiff proposes to define the "Subclass" as all persons in the Main Class:

   (a) whose vehicle was resold by the Bank following repossession; and,

   (b) who:

   i. either were not sent a Post-Sale Notice; or,

   ii. were sent a Post-Sale Notice which failed to contain all of the following information, in the following order:

   1. first, the aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact;

   2. second, the amount of proceeds of the disposition;

   3. third, the aggregate amount of the obligations after deducting the amount of proceeds;

   4. fourth, the amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition;

   5. fifth, the amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in sub-paragraph 1 above; and,

   6. lastly, the amount of the surplus or deficiency.

42. Plaintiff does not know the number of class and subclass members, although that information is in Defendants' possession.

43. However, because this matter involves form notices sent to consumers throughout most states within the United States, Plaintiff believes, that there are thousands of class members, sufficiently numerous that joinder of all members is impractical.

44. There are questions of law or fact common to the class which that predominate. These include but are not limited to the following questions:

    (a) Whether Plaintiff and the Class obtained motor vehicle financing or refinanced their motor vehicle loan through the Bank and pledged their vehicle as collateral;

    (b) Whether the Bank or its agents repossessed the financed vehicle or ordered it to be repossessed;

    (c) Whether the Bank or its agents, after repossessing a vehicle, failed to send the Notice of Repossession in the form and manner required under the UCC;

    (d) As relates to the Subclass, whether the Bank failed to send a Post-Sale Notice to the Subclass members or sent a Post-Sale Notice that did not satisfy the requirements of the UCC;

    (e) Whether Defendants are liable for minimum uniform statutory damages for violating the UCC; and,

    (f) Whether the Bank's failure to send a Post-Sale Notice or its failure to include the requisite content in the Post-Sale Notice were part of a pattern, or consistent with a practice, of non-compliance.

45. Plaintiff's claims are typical of those of the class. All are based on the same factual and legal theories. All class members had their vehicle repossessed by or at the direction of the Bank. All members of the Main Class were sent a non-compliant Notice of Repossession and members of the Subclass who were not sent a statutorily-compliant Post-Sale Notice after the sale of their vehicle. Further, all are entitled, at a minimum, to statutory damages for the Bank's failures to provide compliant UCC notices.

46. Plaintiff will fairly and adequately represent and protect the interests of the Main Class and Subclass.

9

47. The Plaintiff is represented by competent counsel that is experienced in both consumer protection and class action litigation.

48. Plaintiff has no conflict with Class Members in the maintenance of this action, and his claims are typical of, if not identical to the claims of the Class Members.

49. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. This class action represents the fairest and most efficient method of adjudicating this controversy.

50. Plaintiff and the Class Members have substantive claims that are similar, if not identical, in all material respects and will require proof of the same kind and application of the same law.

51. Defendants have acted or refused to act on grounds generally applicable to the Plaintiff, (putative) class and subclass, thereby making appropriate final relief with respect to the Class.

52. There are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions. Damages may be calculated with mathematical precision based solely on Defendants' business records.

53. Because most class members either do not know that their rights have been violated, could not economically justify the effort and expense required to litigate their individual claims or have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover.

54. The questions of law and fact common to the class and subclass predominate over any questions affecting only individual members.

55. The prosecution of several separate actions by the members of the class would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

56. In many instances, Class Members are unaware that claims exist on their behalf. In other cases, Class Members may have knowledge of their potential claims, but have sustained damages in amounts relatively too modest to justify the expense and effort to hire a lawyer.

57. The size of the class, while significant, is not unmanageable and a trial of this matter would similarly not be unwieldy.

## X. CLAIMS

### COUNT 1
### UNIFORM COMMERCIAL CODE
### (MAIN CLASS)

58. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

59. The Notices of Repossession sent by the Bank to Plaintiff and Class Members are deficient because, as set forth above, they fail to contain all of the information required by the UCC.

60. The Defendant failed to act in a commercially reasonable manner by failing to provide a Notice of Repossession that complied with the UCC, as set forth above.

61. Defendant's conduct in failing to comply with the statutory requirements concerning its Notices of Repossession is part of a pattern and consistent with a practice of non-compliance.

## COUNT 2
## UNIFORM COMMERCIAL CODE
## (SUBCLASS)

62. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

63. Defendant violated the UCC by failing to send statutorily-compliant Post-Sale Notices to Plaintiff and to members of the Subclass, as set forth above.

64. Defendant's conduct in failing to comply with the statutory requirements concerning its Post-Sale Notices is part of a pattern or consistent with a practice of non-compliance.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that this Honorable Court:

A. Certify the requested classes and appoint the undersigned as class counsel; and,

B. Monetary Damages

   1. Award the greater of actual *or* minimum statutory compensatory damages as provided by 9625(b) and (c)(2) to each member of Main Class;

   2. Award $500.00 plus minimum statutory damages to each member of the Post-Sale Notice Class; and,

C. Declaratory Relief

   1. Declare that the practices complained of were not commercially reasonable pursuant to 9610(b); and,

   2. Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and cannot be collected, as a matter of law; and,

   3. Declare that any loan by which a Class Member borrowed funds to refinance a disputed deficiency balance is null and void and cannot be collected, as a matter of law;

12

D. Injunctive and Equitable Relief

1. Impose a constructive trust on all ill-gotten proceeds; order an accounting of all such proceeds, and their expedited return, with interest, by ordering Defendants to disgorge all moneys received from any Class Member as a payment towards a disputed deficiency claim or as a payment towards a loan to the extent that it refinanced a disputed deficiency claim pursuant to 9625(a);

2. Enjoin the collection of any invalid and disputed deficiency balance as permitted by 9625(a);

3. Temporarily and/or permanently enjoin the use of all statutorily non-compliant challenged notices;

4. Order Defendant to remove the negative trade line for all class members; and,

5. Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
/Richard Shenkan/
Richard Shenkan
*Attorney for Plaintiff*