**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOSHUA HUGHES, ET AL.,

      Plaintiff,

    v.

NATIONWIDE BANK,

      Defendant.

Civil Action No.: 2:18-cv-01235-MRH

Judge Mark R. Hornak

**DEFENDANT NATIONWIDE BANK'S BRIEF IN SUPPORT OF RULE 12(C) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND TO DISMISS THE NATIONWIDE CLASS ALLEGATIONS FOR LACK OF STANDING; AND RULE 23(D)(1)(D) MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Albert G. Lin (admitted *pro hac vice*)
Marissa A. Peirsol (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Tel: (614) 228-1541
Fax: (614) 462-2616
alin@bakerlaw.com
mpeirsol@bakerlaw.com

*Attorneys for Defendant Nationwide Bank*

4814-5247-1427.19

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE ALLEGATIONS OF THE COMPLAINT.................................................2

    A.   UCC Causes Of Action..............................................................................2

    B.   Alleged Actual And Statutory Damages....................................................2

    C.   Class Definitions .......................................................................................3

III.  THE BANK'S ANSWER ....................................................................................4

IV.  STANDARD.......................................................................................................5

V.   LEGAL ARGUMENT .......................................................................................6

    A.   Plaintiff's § 9616 Claim Should Be Dismissed For Failure To State A Claim. ......6

         1.    No pleaded facts establish a Post-Sale Notice was required.......................7

         2.    In the alternative, the Post-Sale Notice did not violate § 9616(c). .............8

         3.    Plaintiff does not plead recoverable damages under § 9616.......................9

    B.   Plaintiff Lacks Standing Outside Of Pennsylvania And Cannot Assert A Nationwide Class. .......................................................................................11

    C.   Plaintiff's Class Definition Is Not Ascertainable Because It Alleges A Fail-Safe Class....................................................................................................15

    D.   Plaintiff's Class Allegations Fail Because Individual State Law Issues Overwhelm Class-Wide Treatment.........................................................19

         1.    States apply different legal standards to the question of liability. .............20

         2.    States apply different statutes of limitation. .............................................22

         3.    Individual damages issues overwhelm class issues. ..................................23

VI.  CONCLUSION..................................................................................................25

4814-5247-1427.19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Ocwen Loan Serv., LLC,*
321 F.D.R. 125, 179 (E.D. Pa. 2017) ....................................................................15

*In re Amla Litig.,*
282 F. Supp. 3d 751 (2d Cir. 2017) ......................................................................21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................5, 10, 11

*Aspinall v. Thomas,*
118 F. Supp. 3d 664 (M.D. Pa. 2015) .....................................................................5

*Barnard v. Lackawanna Cty.,*
194 F. Supp. 3d 337, 342-42 (M.D. Pa. 2016) ..........................................................5

*Beard v. Vanderbilt Mortg. & Fin., Inc.,*
2008 WL 2323235 (M.D. Tenn. June 2, 2008) ........................................................22

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................5, 8

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.,*
2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ...........................................15, 16, 18, 19

*Boyer v. Diversified Consultants, Inc.,*
306 F.R.D. 536 (E.D. Mich. 2015) .....................................................................17

*Brightwell v. Lehman,*
2006 WL 931702 (W.D. Pa. Apr. 10, 2006) ..........................................................5, 9

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d Cir. 2013) .............................................................................15

*In re Checking Account Overdraft Litig.,*
694 F.Supp.2d 1302 (S.D. Fla. 2010) ..................................................................13

*Colonial Pac. v. N & N Partners, LLC,*
981 F.Supp.2d 1345 (N.D. Ga. 2013) ..................................................................21

*Cubler v. TruMark Fin. Credit Union,*
83 A.3d 235 (Penn. Super. Ct. 2013) ..................................................................22

ii

*Davis v. Bank of Am.*,
  2016 WL 427049 (E.D. Penn. Feb. 3, 2016) ........................................................................24

*In re Ductile Iron Pipe Fittings Indirect Purchaser Anti. Litig.*,
  2013 WL 5503308 (D.N.J. Oct. 2, 2013)..............................................................................13

*Eager v. Credit Bureau Collection Servs., Inc.*,
  2014 WL 3534949 (W.D. Mich. July 16, 2014) ...................................................................16

*Ellsworth v. U.S. Bank, N.A.*,
  2014 WL 2734953 (N.D. Cal. June 13, 2014) ......................................................................15

*Federman v. Bank of Am.*,
  2014 WL 12774688 (D.N.J. Dec. 16, 2014)..........................................................................12

*Fid. Consumer Disc. Co.*,
  482 A.2d 580, 581 (Pa. Super. Ct. 1984).......................................................................20, 22

*First Bank of Ohio v. Wigfield*,
  2008 WL 747742 (Ct. App. Ohio 2008) ...............................................................................20

*In re Flonase Anti. Litig.*,
  610 F.Supp.2d 409 (E.D. Pa. 2009) ......................................................................................12

*In re Ford Motor Co. Ign. Switch Prods. Liab. Litig.*,
  174 F.R.D. 332, 340 (D.N.J. 1997)....................................................................................6, 21

*In re G-Fees Anti. Litig.*,
  584 F.Supp.2d 26 (D.D.C. 2008) ..........................................................................................13

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982)................................................................................................................6

*Glover v. Udren*,
  2013 WL 6237990 (W.D. Pa. Dec. 3. 2013).....................................................................24, 25

*Gotthelf v. Toyota Motor Sales, USA, Inc.*,
  525 F.App'x. 94 (3d Cir. 2013) ............................................................................................16

*Grandalski v. Quest Diag. Inc.*,
  767 F.3d 175 (3d Cir. 2014)....................................................................................................6

*Hansberry v. Lee*,
  311 U.S. 32 (1940)................................................................................................................16

*Harmon v. RapidCourt, LLC*,
  2018 WL 6062355, at *4 n.1 (E.D. Pa. Nov. 20, 2018).........................................................9

iii

*Harper v. Trans Union, LLC*,
    2006 WL 3762035 (E.D. Pa. Dec. 20, 2006).............................................................23, 24

*Herrera v. Client Servs., Inc.*,
    2012 WL 3285632 (D.N.J. Aug. 9, 2012) ............................................................................11

*Huffman v. Credit Union of Tex.*,
    2011 WL 5008309 (W.D. Mo. Oct. 20, 2011).......................................................................22

*Huffman v. Credit Union of Tex.*,
    758 F.3d 963, 966 (8th Cir. 2014) .......................................................................................22

*Hurt v. Shelby Cty. Bd. of Educ.*,
    2014 WL 4269113 (N.D. Ala. Aug. 21, 2014) ....................................................................16

*Kondratick v. Beneficial Consumer Disc. Co.*,
    2006 WL 305399 (E.D. Pa. Feb. 8, 2006) ..........................................................................16

*Lauren v. PNC Bank*,
    296 F.R.D. 389, 390 (W.D. Pa. 2014) .............................................................................6, 14

*Leggat v. Equifax Info. Servs., Inc.*,
    2009 WL 2432371 (E.D. Va. Aug. 6, 2009).........................................................................22

*Lester v. Percudani*,
    217 F.R.D. 345 (M.D. Pa. 2003)..........................................................................................24

*Lewis v. Casey*,
    518 U.S. 343 (1996)........................................................................................................10, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................................11

*In re Magnesium Oxide Anti. Litig.*,
    2011 WL 5008090 (D.N.J. Oct. 20, 2011)............................................................................13

*Mazzei v. Money Store*,
    288 F.R.D. 45 (S.D.N.Y. 2012) ...........................................................................................16

*McCaster v. Darden Rests., Inc.*,
    845 F.3d 794 (7th Cir. 2017) ...............................................................................................17

*McGuire v. BMW of N.A.*,
    2014 WL 2566132 (D.N.J. June 16, 2014) .......................................................................6, 12

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012)..................................................................................................11

iv

*Mountaineer Inves. LLC v. Heath,*
  2011 WL 6038450 (Wash. Ct. App. 2011) ...................................................................20

*Nelson v. State Farm Mut. Auto Ins. Co.,*
  988 F.Supp. 527, 529 n.5 (E.D. Pa. 1997) .................................................................23

*Newton v. Merrill Lynch,*
  259 F. 3d 154 (3d Cir. 2001) ......................................................................................24

*In re Packaged Ice Anti. Litig.,*
  779 F.Supp.2d 642 (E.D. Mich. 2011) ......................................................................13

*Parks v. Dicks Sporting Goods, Inc.,*
  2006 WL 1704477 (W.D.N.Y. June 15, 2006) .........................................................13

*Peoples Heritage Sav. Bank v. Theriault,*
  670 A.2d 1391 (Me. 1996) .........................................................................................21

*Porcell v. Lincoln Wood Prods., Inc.,*
  713 F. Supp. 2d 1305 (D.N.M. 2010) ........................................................................23

*Powers v. Lycoming Eng.,*
  328 F.App'x. 121 (3d Cir. 2009) ..................................................................................6

*Randleman v. Fid. Nat'l Title Ins. Co.,*
  646 F.3d 347 (6th Cir. 2011) ......................................................................................17

*Reardon v. ClosetMaid Corp.,*
  2013 WL 6231606, at *6 (W.D. Pa. Dec. 2, 2013) ...................................................11

*In re Refrigerant Compressor Anti. Litig.,*
  2012 WL 2917365 (E.D. Mich. July 17, 2012) .........................................................13

*Sauter v. CVS Pharmacy, Inc.,*
  2014 WL 1814076 (S.D. Ohio May 7, 2014) ............................................................17

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
  678 F.3d 235 (3d Cir. 2012) .........................................................................................5

*Self v. TPUSA, Inc.,*
  2009 WL 273326 (D. Utah Feb. 4, 2009) ..................................................................13

*Shelton v. Bledsoe,*
  775 F.3d 554 (3d Cir. 2015) .......................................................................................15

*Show-Me Credit Union v. Mosely,*
  541 S.W.3d 28 (Mo. Ct. App. 2018) ..........................................................................21

v

*Simington v. Lease Fin. Grp., LLC,*
    2012 WL 651130 (S.D.N.Y. Feb. 28, 2012)...............................................13

*Slimm v. Bank of Am. Corp.,*
    2013 WL 1867035 (D.N.J. May 2, 2013) .....................................................11

*Smith v. Pizza Hut, Inc.,*
    2011 WL 2791331 (D.Colo. July 14, 2011) .................................................13

*Steele v. First Nat'l Bank of Mifflintown,*
    963 F. Supp. 2d 417 (M.D. Pa. 2013)...........................................................9

*Temple v. Circuit City Stores, Inc.,*
    2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007) .............................................13

*In re Terazosin Hydrochloride Anti. Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .........................................................13

*In re Thomas,*
    529 B.R. 628 (W.D. Pa. 2015)........................................................................5

*Trunzo v. Citi Mortg.,*
    2014 WL 1317577, at *5 (W.D. Pa. Mar. 31, 2014) ................................6, 20

*Turbe v. Gov't of V.I.,*
    938 F.2d 427 (3d Cir. 1991)............................................................................5

*Union Safe Deposit Bank v. Floyd,*
    90 Cal.Rptr.2d 36 (Cal. Ct. App. 1999), *as modified* (Nov. 3, 1999).....................21

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)....................................................................................6

*In re Wellbutrin XL Anti. Litig.,*
    260 F.R.D. 143 (E.D. Pa. 2009)........................................................12, 13, 14

*WesBanco Bank, Inc. v. Beattie,*
    2017 WL 678836 (Pa. Super. Ct. Feb. 21, 2017)..................................20, 22

*Winer Fam. Trust v. Queen,*
    503 F.3d 319 (3d Cir. 2007)..........................................................................11

*Zarichny v. Complete Payment Rec'y Servs., Inc.,*
    80 F. Supp. 3d 610 (E.D. Pa. 2015) ............................................15, 16, 17, 18

*Zimmerman v. HBO Aff. Grp.,*
    834 F.2d 1163 (3d Cir. 1987).........................................................................12

vi

**Statutes**

13 Pa. C.S.A. § 9625 ...................................................................................... *passim*

13 Pa. C.S. § 9610 .................................................................................................3

13 Pa. C.S. § 9611 .................................................................................................3

13 Pa. C.S. § 9613 ....................................................................................3, 18, 19

13 Pa. C.S. § 9614 .................................................................................2, 3, 20, 22

13 Pa. C.S. § 9616 ...................................................................................... *passim*

13 Pa. C.S. § 9628 ...............................................................................................10

15 U.S.C. § 1681 .............................................................................................9, 11

15 U.S.C. § 1692 .....................................................................................11, 15, 17

Fair and Accurate Credit Transactions Act of 2003,
    Pub.L. 108-159, 15 U.S.C. § 1681 .................................................................9

O.C.G.A. § 11-9-613(1)(C)...............................................................................21

U.C.C. § 9-616 .............................................................................................8, 10

U.C.C. § 9-625 ........................................................................10, 22, 23, 25

U.C.C. § 9-628 ...............................................................................................10

**Rules**

Fed. R. Civ. P. 1 .................................................................................................14

Fed. R. Civ. P. 12 ...................................................................................... *passim*

Fed. R. Civ. P. 23 ...................................................................................... *passim*

**Other Authorities**

5A Wright & Miller, Fed. Prac. Proc. § 1327 .....................................................5

Cal. Civ. Prac. Bus. Litig. § 46:114 ....................................................................8

## I.     <u>**INTRODUCTION**</u>

Plaintiff Joshua Hughes's car was repossessed and sold in the Fall of 2015.  Now more than three years later, Plaintiff claims that Defendant Nationwide Bank's ("The Bank") repossession notices violated Pennsylvania's UCC, seeking to represent a nationwide class. Plaintiff's claims are legally deficient for numerous reasons.

**First**, Plaintiff does not plead a statutory violation relating to the Post-Sale Notice.  Though Plaintiff claims a notice was never sent, a notice is only required upon request, or if the Bank seeks to collect a deficiency; neither allegation is made.  Plaintiff alternatively claims the notice was sent but violated § 9616.  But the notice, now incorporated by reference, establishes that the UCC was satisfied.  Nor does Plaintiff plead recoverable damages under the UCC.

**Second**, Plaintiff lacks standing to assert class claims outside of Pennsylvania.  Where a plaintiff does not reside and suffers no injury in any other state, courts dismiss nationwide class allegations for lack of standing.  Hughes alleges no facts regarding any other state.

**Third**, Plaintiff alleges an impermissible fail-safe class by defining the class through UCC violations he seeks to adjudicate.  The inclusion of statutory requirements in a class definition makes class membership coextensive with liability, renders the class unmanageable, makes it logically circular, and violates res judicata.

**Finally**, differences among state laws and individualized damages issues necessarily preclude class treatment.  Statute of limitations and standards of liability under the UCC vary greatly throughout the fifty states, and Plaintiff's damages claim, as pleaded, requires a case-by-case determination.

Accordingly, the Bank respectfully requests this Court to grant this Motion.

4814-5247-1427.19

## II.   THE ALLEGATIONS OF THE COMPLAINT

### A.   UCC Causes Of Action

According to the Complaint, Plaintiff refinanced his car on July 9, 2013.  Compl. ¶ 12.  The Bank or its agents repossessed the car on or about September 17, 2015 and sent a Notice of Repossession under 13 Pa. C.S. § 9614.  *Id.* ¶¶ 12, 25.  Plaintiff claims this notice failed to state: (i) whether the car would be sold at a public or private sale; and (ii) that Hughes "was entitled to an accounting of the unpaid indebtedness and the charge for the accounting … ."  *Id.* ¶ 25.

The Complaint next claims the Bank "never sent" a Post-Sale Notice.  *Id.* ¶ 29.  In the alternative, Plaintiff claims that such notice did not include information required under 13 Pa. C.S. § 9616(a) and (c).  *Compare id.* ¶¶ 29, 41 *with* 13 Pa. C.S. § 9616(c).

Plaintiff summarily alleges the notices were not "commercially reasonable," *id.* ¶ 20, but no factual allegations establish prejudice.  Plaintiff never challenges his default or the appropriateness of repossession.  No allegation indicates he was unaware the car would be sold, and he does not allege he tried to stop the sale or make a competing bid.  If no notice was sent, there are no allegations that the Bank tried to collect a loan deficiency after repossession or that Plaintiff requested a post-sale accounting.

### B.   Alleged Actual And Statutory Damages

Plaintiff seeks "the greater of actual damages and statutory damages."  *Id.* ¶ 36.  Plaintiff alleges that under the UCC, actual damages might consist of: (a) inflated fees; (b) loan payments collected after the car was redeemed; (c) payments made toward invalid deficiencies; (d) expenses incurred in retrieving a vehicle in a wrong county; and (e) damages from invalidly sold vehicles. *Id.* ¶ 37.  But Plaintiff does not allege that he personally suffered actual damages.

As to statutory damages, Plaintiff claims that the UCC provides for a "minimum" statutory damage recovery for a debtor equivalent to "the credit service charge (finance charge) plus 10%

4814-5247-1427.19

of the principal amount of the obligation (amount financed)." *Id.* ¶ 34. Plaintiff also seeks damages of $500, which is permitted if a violation of § 9616 is "part of a pattern of noncompliance or consistent with a practice of noncompliance." 13 Pa. C.S. § 9625(e); Compl. ¶ 39. But Plaintiff alleges no other facts to support a practice or pattern of noncompliance.

### C.   Class Definitions

The Complaint states two class definitions, each of which incorporates UCC statutory requirements. Under (d)(i) and (d)(ii) below, the "Main Class" incorporates requirements from 13 Pa. C.S. § 9613(1)(iii)-(iv):

> [A]ll persons:
> (a) who financed or refinanced a motor vehicle primarily for personal, family, or household use through the Bank; and
> (b) from whom the Bank, as secured party, repossessed the vehicle or ordered it to be repossessed; and
> (c) who, at the time the Bank or its agent, sent a Notice of Repossession to its borrower(s), who resided in a state that adopted the sections of the UCC which is the same or substantially similar in content to 13 Pa. C.S. §§ 9610, 9611, 9613, 9614, and 9625; and
> (d) who were not sent a Notice of Repossession that clearly and conspicuously stated:
>> (i) the intended method of disposition (whether the vehicle would be sold at a public or private sale) and, in the case of a public sale, the time and place of the location of the disposition; or
>> (ii) that the recipient was entitled to an accounting of the unpaid indebtedness and the charge for such accounting.

Compl. ¶ 40. Similarly, the "Subclass" restates requirements from 13 Pa. C.S. § 9616(c):

> [A]ll persons in the Main Class:
> (a) whose vehicle was resold by the Bank following repossession; and,
> (b) who:
>> (i)  either were not sent a Post-Sale Notice; or
>> (ii) were sent a Post-Sale Notice which failed to contain all the following information, in the following order:
>>> 1.  first, the aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact;
>>> 2.  second, the amount of proceeds of the disposition;
>>> 3.  third, the aggregate amount of the obligations after deducting the amount of proceeds;

3

4. fourth, the amount, in aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral and attorney fees secured by the collateral which are known to the secured party and relate to the current disposition;

5. fifth, the amount, in the aggregate or by type and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in sub-paragraph 1 above; and,

6. lastly, the amount of the surplus or deficiency.

*See* Compl. ¶ 41.

## III.  THE BANK'S ANSWER

In contrast to the conclusory allegations of the Complaint, the Bank provides factually specific responses supported by documents attached to its Answer.  **First**, Bank documents show that Plaintiff was aware of the repossession and sale.  After receipt of the Repossession Notice, Plaintiff asked the Bank whether the car had been sold.  *See* Answer ¶ 12, Cust. Serv. Rec., Ex. E.

| 10/17/2015 | A | CMOTT | Product Type 50110 Account    1672 TT CST VIOK CST SAID HE RECEIVED A BILL AND IS NOT GOING TO PAY IT. WANTS TO KNOW IF VEHICLE HAS BEEN SOLD YET. AS WE CAN TELL AS OF RIGHT NOW IT DOESN"T LOOK LIKE ITS BEEN SOLD AS OF YET. | CXM5200001 | 12:48:38 PM |

**Second**, Plaintiff's allegation that he did not receive a Post-Sale Notice, or that such notice was statutorily deficient, is contradicted by documents incorporated by reference.  The Bank or its agent mailed a notice to Plaintiff on April 12, 2016, which included information required by § 9616(c).  *See* Answer ¶ 14, Post-Sale Notice, Ex. F.

- The total amount you owed at the time the sale was made, as of the date of this letter:  $17,508.05
- Total proceeds from the sale:  $12,400.00
- After deducting the proceeds from the sale, the total amount you still owe:  $5,108.05
- Our expenses associated with the sale:  $1,096.00
  *(see our itemized list)*
  1. Recovery Expenses:  $470.00
  2. Transportation:  $225.00
  3. Reconditioning Expenses:  $85.00
  4. Remarketing Fee:  $125.00
  5. Auction/Sale:  $100.00
  6. Cyber Lot:  $30.00
  7. Title:  $61.00
- The total amount of any other credits rebated to you (including insurance premium refunds):  $0.00

4814-5247-1427.19

**Important steps you need to take**
The sale resulted in a deficiency of $6,204.05. *

The Customer Service Record indicates the notice was mailed to Plaintiff's home address.  *See* Answer ¶ 14, Cust. Serv. Rec., Ex. E.

| 4/12/2016 | A | KMESS | Product Type 50110 Account   1672 DEF BAL CHECK COMPLETE- LETTER MAILED. AMT OWED 6204.05 | KXM5200058 | 4:00:47 PM |
|---|---|---|---|---|---|

## IV.   STANDARD

On a Rule 12(c) motion for judgment on the pleadings, a court may consider the complaint, answer, attached exhibits, documents incorporated into those pleadings, and matters of public record.  *Aspinall v. Thomas,* 118 F. Supp. 3d 664, 670 (M.D. Pa. 2015); *Barnard v. Lackawanna Cty.*, 194 F. Supp. 3d 337, 340, 342 (M.D. Pa. 2016) (considering answer and attached exhibits on Rule 12(c) motion); 5A Wright & Miller, Fed. Prac. Proc. § 1327 (same).

Rule 12(c) and Rule 12(b) standards are the same.  *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  For a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The same standard applies to a Rule 12(b)(1) facial attack to standing. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243-44 (3d Cir. 2012) (facial challenge to standing is "effectively the same as dismissal for failure to state a claim").  "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," or a "naked assertion devoid of further factual enhancement" do not suffice.  *Iqbal*, 556 U.S. at 677-78; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007). A court is not obligated to "accept as true bald assertions [], legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice."  *In re Thomas*, 529 B.R. 628, 634-35 (W.D. Pa. 2015); *Brightwell v. Lehman*, 2006 WL 931702, at *3 (W.D. Pa. Apr. 10, 2006).

5

Courts may dismiss or strike class allegations under Rule 12 or 23(d)(1)(D).  *See McGuire v. BMW of N.A.*, 2014 WL 2566132, at *6 (D.N.J. June 16, 2014) (Rule 12(b)(6) dismissal of class allegations); *Lauren v. PNC Bank,* 296 F.R.D. 389, 390 (W.D. Pa. 2014) (Rule 12(b)(1) dismissal of class allegations for lack of standing) (McVerry, J.); *Trunzo v. Citi Mortg.*, 2014 WL 1317577, at *5 (W.D. Pa. Mar. 31, 2014) (Hornak, J.) (adjudicating both Rule 12(c) and Rule 23(d)(1)(D) at the same time).  Like a Rule 12(c) motion, a Rule 23(d)(1)(D) motion to strike class allegations is granted where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met [and] … no amount of discovery will demonstrate that the class can be maintained."  *Id.* at *5.

A class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (court must conduct a "rigorous analysis" regarding class assertions).  When testing class allegations, the "plaintiff bears the burden of advancing a *prima facie* showing that the [Rule 23 class requirements] are satisfied or that discovery is likely to produce substantiation of the class allegations."  *Trunzo*, 2014 WL 1317577, at *5; *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982).  A rigorous analysis is critical when a nationwide class is based on state law claims.  Plaintiff must "credibly demonstrate through an extensive analysis of state law variances that class certification does not present insuperable obstacles."  *Ford Motor Co. Ign. Switch Prods. Liab.*, 174 F.R.D. 332, 340 (D.N.J. 1997); *Grandalski v. Quest Diag. Inc.*, 767 F.3d 175, 183-84 (3d Cir. 2014); *Powers v. Lycoming Eng.*, 328 F.App'x. 121, 127-28 (3d Cir. 2009).

## V.   LEGAL ARGUMENT

### A.   Plaintiff's § 9616 Claim Should Be Dismissed For Failure To State A Claim.

Plaintiff's 13 Pa. C.S. § 9616 claim relies on two factual allegations pleaded in the alternative and seeks statutory damages for those purported violations.  **First**, Plaintiff claims that

the § 9616 Post-Sale Notice was "never sent."  Compl. ¶ 14.  **Second**, and in the alternative,

Plaintiff claims that if the notice was sent then it did not satisfy the six statutory requirements of

§ 9616(c).  *Id.* at ¶ 41.  **Third**, Plaintiff claims that either of these violations result in minimum

damages under § 9625(c)(2) of 10% of the principal and the finance charge, and $500 per incident

under § 9625(e) due to a pattern of noncompliance.  But as set forth below, Plaintiff has failed to

state a plausible § 9616 claim and judgment on the pleadings is appropriate under Rule 12(c).

> 1.      ***No pleaded facts establish a Post-Sale Notice was required.***

Plaintiff's primary factual allegation is that the Post-Sale Notice was "never sent."  Compl.

¶ 14.  But even accepting this allegation as true, Plaintiff does not establish a § 9616 violation.  A

creditor is only required to send a § 9616 consumer notice under these circumstances:

> (1) [The secured party shall send] an explanation to the debtor or consumer obligor,
> as applicable, after the disposition and:
>> (i) before or when the secured party accounts to the debtor and pays any
>> surplus or **first makes written demand on the consumer** obligor after the
>> disposition for payment of the deficiency; and
>> (ii) within 14 days after **receipt of a request**.
> (2) In the case of a consumer obligor who is liable for a deficiency, **within 14 days
> after receipt of a request**, send to the consumer obligor a record waiving the
> secured party's right to a deficiency.

13 Pa. C.S. § 9616(b) (emphasis added).   The Official Comments make clear that a notice is

required only if the creditor seeks to collect a deficiency or the consumer requests an accounting:

> A secured party who **does not attempt to collect a deficiency in writing** or
> account for and pay a surplus **has no obligation to send an explanation** under
> subsection (b)(1) and, consequently, **cannot be liable for noncompliance**.  A
> debtor or secondary obligor need not wait until the secured party commences
> written collection efforts in order to receive an explanation of how a deficiency or
> surplus was calculated.   Subsection (b)(2) obliges a secured party to send an
> explanation within **14 days after it receives a "request."**

13 Pa. C.S. § 9616, *UCC Comment 2* (emphasis added).

Similar authority notes that where a debtor does not request an accounting, or a creditor

does not seek to collect the deficiency, a UCC § 9-616 Post-Sale Notice is not required.  *See*

Anderson on the UCC § 9-616:5 (under the Model UCC, Post-Sale Notice only required upon consumer's request or when there is a demand for deficiency); 26A Strong's N.C. Index 4th Sec. Trans. § 153 (same; analyzing North Carolina law); Cal. Civ. Prac. Bus. Litig. § 46:114 (same; analyzing California law).

In short, an allegation that the Post-Sale Notice was "never sent" is not sufficient. Rather, Plaintiff must **also** plead facts showing that the Bank was **required** to send a Post-Sale Notice. But the Complaint never makes a conclusory allegation—let alone one buttressed by facts—that the Bank made a post-repossession written demand to enforce the deficiency. *See* 13 Pa. C.S. § 9616(b)(1) (notice required only if written demand made). Nor did Plaintiff allege he requested a Post-Sale Notice—or state facts that would plausibly establish this request, such as the date of the request. *See id.* at § 9616(b)(2). Accordingly, if this Court accepts the notice was "never sent," the § 9616 violation is not plausible and should be dismissed. *See Twombly,* 550 U.S. at 553-56.

### 2. *In the alternative, the Post-Sale Notice did not violate § 9616(c).*

Plaintiff pleads in the alternative that if the Post-Sale Notice was sent, it did not comply with § 9616(c). But by pleading in the alternative, Plaintiff incorporates the notice, which the Court can consider on this Rule 12 motion. A side-by-side comparison of Plaintiff's allegations and § 9616(c) establish that the Bank's notice was compliant.

| **Allegedly Missing Information Under § 9616(c), Compl. ¶ 41.** | **Actual Post-Sale Notice, Answer Ex. F** |
|---|---|
| "The aggregate amount of the obligation secured by the security interest, and, if the amount reflects a rebate of unearned interest or credit service charge, a timely indication of that fact …" | "Total Amount owed at the time the sale was made as of the date of the letter" |
| "The amount of proceeds of the disposition" | "Total proceeds from the sale" |
| "The aggregate amount of the obligations after deducting the amount of proceeds" | "After deducting the proceeds from the sale, the total amount you still owe" |

8

| "The amount in aggregate or by type, and the type of expenses …" | "Expenses associate with sale: Recovery Expenses; Transportation, Reconditioning Expenses; Remarketing Fee; Auction/Sale; Cyber Lot; Title" |
|---|---|
| "The amount, in the aggregate or by type and types of credits …" | "The total amount of any other credits rebated to you" |
| "The amount of the surplus or deficiency" | "The sale resulted in a deficiency of $6,204.05" |

*Compare* Compl. ¶ 41 *with* Answer, Post-Sale Notice, Ex. F *and* 13 Pa. C.S. § 9616(c) (setting forth the above required information for a Post-Sale Notice).

Pennsylvania district courts dismiss claims where allegations are contradicted by documents incorporated by reference and integral to a plaintiff's claims. *See Harmon v. RapidCourt, LLC*, 2018 WL 6062355, at *4 n.1 (E.D. Pa. Nov. 20, 2018) (credit reporting agency provided allegedly false information to employer in violation of FCRA and FACTA; exhibits attached to motion to dismiss were integral to claims and could be reviewed on a Rule 12(b) motion; consumer claims dismissed); *Brightwell,* 2006 WL 931702, at *6 (W.D. Pa. 2006) (documents referred to in complaint contradicted allegations; claim dismissed); *Steele v. First Nat'l Bank of Mifflintown*, 963 F. Supp. 2d 417, 421-22 & n.2 (M.D. Pa. 2013) (dismissing claims on Rule 12(c) where allegations contradicted documents referred to in the complaint).

By pleading in the alternative, Plaintiff has referred to the notice and made it integral to his claim. Because the Bank's Post-Sale Notices satisfies § 9616(c), dismissal is appropriate.

### 3.   *Plaintiff does not plead recoverable damages under § 9616.*

Nor does Plaintiff plead recoverable damages from purported violations of § 9616. As an initial matter, Plaintiff does not allege any actual damages under § 9616. The Complaint identifies a host of injuries suffered by absentee class members—ranging from invalid deficiencies to inflated fees. *See* Compl ¶ 37. But the Complaint never alleges **Plaintiff** personally suffered these actual damages, and therefore, does not sufficiently plead recoverable damages. *Iqbal*, 556 U.S. at

9

678 (conclusions without facts assertions cannot survive the plausibility standard); *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (alleged personal injury must be independent from class members).

Rather, the Complaint seeks recovery under 13 Pa. C.S. § 9625(c)(2), which sets minimum damages for consumer claims at 10% of the principal and the total finance charge.  *See* Compl. ¶ 30.  But § 9625(c)(2) recovery is not permitted for § 9616 violations:

> (d) **Limitation of liability for statutory damages.**   A secured party is not liable to any person under section 9625(c)(2) (relating to remedies for secured party's failure to comply with division) for its failure to comply with section 9616 (relating to explanation of calculation of surplus or deficiency).

13 Pa. C.S. § 9628(d).  Multiple Official Comments emphasize this prohibition.  *See* 13 Pa. C.S. § 9628, *UCC Comment 3* ("Subsection (d) excludes noncompliance with section 9-616 entirely from the scope of statutory damages liability under section 9-625(c)(2)."); 13 Pa. C.S. § 9625, *UCC Comment 4* ("A secured party is not liable for statutory damages under [Section 9625(c)(2)]… for failure to comply with Section 9-616 (*see* Section 9-628(d).").  Because they are prohibited by statute, § 9625(c)(2) damages for the § 9616 claim should be dismissed.

Plaintiff also seeks $500 in statutory damages under § 9625(e)(5) on the grounds that the § 9616 violation is part of pattern or practice of noncompliance.  But as explained above, the alleged facts do not establish the Bank was required to send a Post-Sale Notice.  *See* 13 Pa. C.S. § 9616, *UCC Comment 2.*  By pleading in the alternative, the Post-Sale Notice was incorporated by reference and satisfies the § 9616(c) requirements.  *See* Answer, Post-Sale Notice, Ex. F.  The Complaint presents no other facts establishing a pattern or practice that violated § 9616.

Where a plaintiff fails to plead the statutory prerequisites to a claim, district courts do not hesitate to grant dismissal.  *See Herrera v. Client Servs., Inc.*, 2012 WL 3285632, at *2 (D.N.J. Aug. 9, 2012) (granting motion to dismiss claim under FDCPA because plaintiff failed to allege facts supporting an inference that defendant failed to make required disclosure); *Slimm v. Bank of*

*Am. Corp.*, 2013 WL 1867035, at *16 (D.N.J. May 2, 2013) (dismissing TILA claim because the record indicated plaintiff received required disclosures); *Reardon v. ClosetMaid Corp.*, 2013 WL 6231606, at *6 (W.D. Pa. Dec. 2, 2013) (Hornak, J.) (explaining if plaintiff failed to allege a statutory deficiency in defendant's notice under the FCRA, plaintiff's claims "must fail").  Such a fact-deficient pleading cannot state a plausible claim.  *Iqbal*, 556 U.S. at 678.  Accordingly, judgment on the pleadings is appropriate on the § 9616 claim for failure to state a claim.

### B.   Plaintiff Lacks Standing Outside Of Pennsylvania And Cannot Assert A Nationwide Class.

This Court should dismiss Plaintiff's nationwide class allegations because he lacks standing to assert UCC claims outside of Pennsylvania.  Standing is the threshold constitutional question for every claim in federal court.  *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 221-22 & n.9 (3d Cir. 2012); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  At the pleading stage, the plaintiff bears the burden of presenting facts showing: (1) a "concrete and particularized" injury-in-fact; (2) causation such that injury is "fairly traceable" to the "challenged action of the defendant;" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  *See id.* at 560.

Standing must be established personally and cannot depend on the injuries of a purported class.  *See Lewis*, 518 U.S. at 357 ("That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured.");  *Winer Fam. Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) ("The initial inquiry … is whether the lead plaintiff individual has standing, not whether or not other class members have standing."); *Zimmerman v. HBO Aff. Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("To be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim.").  And standing must be required for each class claim asserted:

> Standing in the context of class actions remains a claim by claim prerequisite.  Each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim.

*In re Wellbutrin XL Anti. Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (internal quotes and citations omitted); *In re Flonase Anti. Litig.*, 610 F. Supp. 2d 409, 414 (E.D. Pa. 2009) ("At least one named plaintiff must have a cause of action on a claim for that claim to survive a motion to dismiss.").

This principal is emphasized in nationwide class actions asserting state law claims.  Courts dismiss or strike class allegations where no plaintiff resides or suffers injury in a state:

> A named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim.  For example, a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state.

*In re Wellbutrin*, 260 F.R.D. at 152 (dismissing class allegations on a Rule 12(b) motion to dismiss); *accord McGuire*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) (same); *In re Flonase*, 610 F. Supp. 2d at 418-19 (E.D. Pa. 2009) (same); *Federman v. Bank of Am.*, 2014 WL 12774688, at *10 (D.N.J. Dec. 16, 2014) (same).  Practical considerations undergird the requirement that standing exists for each state law claim:

> The alternative … would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid. The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road.

*In re Wellbutrin*, 260 F.R.D. at 155; *In re Magnesium Oxide Anti. Litig.,* 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) ("Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized

injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis.").

This circuit is not unique.  Courts across the country dismiss nationwide state law class allegations where the named plaintiff has no standing to assert claims in those states.  *See In re Packaged Ice Anti. Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (Rule 12 dismissal; "[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (Rule 12 dismissal; "[T]he Court finds that Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state."); *Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (Rule 12 dismissal; "Plaintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes."); *Parks v. Dicks Sporting Goods, Inc.*,  2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006) (Rule 12 dismissal; plaintiff "was never employed by defendants anywhere other than New York" and thus lacked standing to assert other state law claims).[1]

Judge McVerry recently applied this principal in an analogous class action on a Rule 12(b) motion.  In *Lauren v. PNC Bank,* 296 F.R.D. 389 (W.D. Pa. 2014), a consumer asserted a 50-state consumer class action against PNC Bank for its purported practice of "force-placed insurance" on mortgaged homes where the homeowners' insurance policy had lapsed.  *See id.* at 390; *see also Lauren Compl.,* 2013 WL 3010865, at ¶ 3 (W.D. Pa. June 4, 2013) (Dkt. 1).   Plaintiff, an Ohio

---

[1] *See also In re Ductile Iron Pipe Fittings Indirect Purchaser Anti. Litig.*, 2013 WL 5503308, at *12 (D.N.J. Oct. 2, 2013) (dismissing for lack of standing state law class allegations on Rule 12 motion); *In re Refrigerant Compressor Anti. Litig.*, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012) (same); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (same); *In re G-Fees Anti. Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008) (same); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *7-10 (D. Colo. July 14, 2011) (same); *In re Terazosin Hydrochloride Anti. Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (same); *Self v. TPUSA, Inc.*, 2009 WL 273326, at *2 (D. Utah Feb. 4, 2009) (same).

resident with Ohio property, sought to represent absentee class members in "49 other states" asserting state law unjust enrichment claims. *See Lauren*, 296 F.R.D. at 390. Judge McVerry dismissed the nationwide class allegations for lack of standing:

> Upon considerable reflection and review of the cases cited by each side in their comprehensive briefs, the Court concludes that Lauren lacks standing to assert unjust enrichment claims based on the laws of states other than Ohio … . Under the facts and circumstances of this case, deferring a ruling on standing until the close of the class certification process would not be consistent with Rule 1 because such deferral would trigger extensive discovery costs and delay. Lauren suffered an alleged injury exclusively under Ohio law. Therefore, she does not have standing to assert unjust enrichment claims under the laws of any other states.

*Id.* at 390-91.

These holdings apply with equal force to the instant class action. Plaintiff is a Pennsylvania resident alleging violations of Pennsylvania's UCC, Compl. at ¶¶ 3, 23-32, seeking to represent a nationwide class claiming recovery under the UCC of other states. *See* Compl. ¶¶ 40-41. But Plaintiff does not allege that he ever resided, bought a car, was subject to repossession, or suffered UCC violations outside of Pennsylvania. In other words, Plaintiff cannot establish standing outside of Pennsylvania and cannot assert a cause of action under the laws of other states.

In addition, the practical considerations described in *Wellbutrin* and *Lauren* further support dismissal of the class allegations. There is significant state law variation relating to the application of the UCC sections pleaded in this case, ranging from different standards of liability to the statute of limitations. *Lauren*, 296 F.R.D. at 391 n.1 (representation of other states posed significant hurdles given state law variation of unjust enrichment claims). Requiring the parties to spend the time, energy, and cost of class discovery is inappropriate where Plaintiff is not subject to the same

statute, does not share a similar injury, and cannot seek similar redress.  Accordingly, judgment

on the pleadings for the nationwide class allegations is appropriate for lack of standing.[2]

### C.   Plaintiff's Class Definition Is Not Ascertainable Because It Alleges A Fail-Safe Class.

In addition, Plaintiff's class definition is not ascertainable because it alleges a fail-safe

class.  The Third Circuit notes ascertainability is "an essential prerequisite" of a class action.

*Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013); *Shelton v. Bledsoe*, 775 F.3d 554, 559

(3d Cir. 2015) (ascertainability requires that "members of the class [must be] identifiable at the

moment of certification").  Ascertainability is two-fold: the plaintiff must demonstrate (i) the class

is readily ascertainable with reference to objective criteria, and (ii) a reliable and administratively

feasible method to determine membership.  *See Carrera*, 727 F.3d at 306 (plaintiff bears the burden

of showing ascertainability); *Abraham v. Ocwen Loan Serv., LLC*, 321 F.R.D. 125, 179 (E.D. Pa.

2017) (plaintiff failed to demonstrate FDCPA class was ascertainable).

A class definition is not ascertainable when it alleges an impermissible "fail-safe" class.

*See Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, 2015 WL 401443, at *4

(W.D. Pa. Jan. 28, 2015); *Zarichny v. Complete Payment Rec'y Servs., Inc.*, 80 F. Supp. 3d 610,

625 (E.D. Pa. 2015) (same).   A fail-safe class occurs when an adjudication of liability also

determines class membership and the class only includes those who must prevail on their claim.

*See Bell,* 2015 WL 401443, at *4; *Zarichny,* 80 F. Supp. 3d at 623-25.  Furthermore, "[w]hen a

class definition involves an ultimate issue of liability, the court must conduct mini-hearings in

order to determine who belongs within the class and who does not, rendering the process

---

[2] Some district courts have permitted nationwide class actions where a named plaintiff resides in only one state.  *See Ellsworth v. U.S. Bank, N.A.,* 2014 WL 2734953, at *31 (N.D. Cal. June 13, 2014).  But even those courts acknowledge that nationwide treatment is inappropriate for state statutory or common law claims where there is significant state law variation.  *See id.*  As detailed below, state law interpretation of these UCC sections are myriad.  Accordingly, standing should be required on a state-by-state basis.

administratively infeasible and therefore unascertainable." *Bell*, 2015 WL 410443, at *4; *Kondratick v. Beneficial Consumer Disc. Co.*, 2006 WL 305399, at *10 (E.D. Pa. Feb. 8, 2006) ("Thus, because mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified.").

A fail-safe class presents numerous ascertainability problems.  Fail-safe classes are "unmanageable because the members of the class [can] only be known after a determination of liability." *Eager v. Credit Bureau Collection Servs., Inc.*, 2014 WL 3534949, at *4 (W.D. Mich. July 16, 2014) (internal citations omitted).  And a fail-safe class incorporates a logical fallacy because "the class definition is essentially circular." *Hurt v. Shelby Cty. Bd. of Educ.*, 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014) ("[T]he class definition assumes what it ostensibly seeks to prove.  This is itself problematic."); *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (proposed class of those charged fees that "were not permitted" wrongly defines the class "by the very liability the plaintiff seeks to establish").

Most importantly, a fail-safe class presents constitutional problems because it "impermissibly skirts the bar of res judicata." *Zarichny*, 80 F. Supp. 3d at 624.  *Res judicata* is grounded in due process—that a final adjudication is binding and not subject to successive litigation because parties received notice and an opportunity to be heard. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) (explaining same).  *Res judicata* is extended to a class action because due process is provided to nonparty class members via the Rule 23 class prerequisites.  *See id.; Gotthelf v. Toyota Motor Sales, USA, Inc.*, 525 F. App'x. 94, 99-101 (3d Cir. 2013) (extension of due process to absentee class members through Rule 23).

These protections are lost in a fail-safe class.  If there is a favorable decision, the absentee class member enjoys the benefits of that judgment.  But if the decision is unfavorable, no class is

formed, and the denial of liability does not attach.  Accordingly, despite the final judgment, the purported class member is free to pursue identical successive litigation against the exact same defendant for the exact same claim.  *See Zarichny*, 80 F. Supp. 3d at 624-25; *accord McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017).

As a general rule, courts hold that class allegations which include statutory requirements or presume liability in the class definition are fail-safe classes and thus improper.  *See Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (striking class definition that proposed a class consisting solely of persons who can establish that defendant violated the statute at issue); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015) (same); *see also Randleman v. Fid. Nat.'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (identifying an improper fail-safe class "is an independent ground for denying class certification").

Pennsylvania district courts strike fail-safe classes for this reason.  For example, in *Zarichny*, plaintiff alleged two classes: the first on behalf of persons who received phone calls from defendants without providing "written notice" as expressly required under the FDCPA; and the second on behalf of persons who received phone calls from defendants without receiving "prior consent" as expressly required under the TCPA.  *See Zarichny*, 80 F. Supp. 3d at 623.  The "defining characteristic" of both classes was statutory liability under the FDCPA and TCPA.  *Id.* at 624.  The court therefore held that the definitions "created impermissible fail-safe classes;" if the defendant prevailed, no class would form, and the putative class members would be free to litigate the same claim against the defendant.  *Id.* at 626.

Likewise, in *Bell,* class members were determined by the alleged liability:

[R]esidents … who have suffered **similar damages** to their property by the invasion of particulates, chemicals, and gases from Defendant's facility which thereby caused damages to their real property.

*Bell*, 2015 WL 401443, at *4 (emphasis added).   But this definition required a mini-trial to determine membership:

> The incorporation of a standard that turns on subjective criteria is administratively infeasible and additionally renders the Class un-certifiable. Not only is the "similarity criteria" subjective, but it further impedes into the area of ultimate issue determination, as the "damages" alleged by Plaintiffs are, inter alia, the result of the very nuisance and trespass that they allege. If Plaintiffs were to move forward with the "Class" as constructed, the Court would be forced to first determine the ultimate issue of damages suffered by Plaintiffs, and then compare all potential class members to that subjective standard. Such a class is not ascertainable or workable.

*Id.* at *5.  Accordingly, Judge Bisoon granted the motion to strike.

Here, Plaintiff's definitions violate the prohibition on fail-safe classes in the same way. Like *Zarichny*, the classes are defined by statutory requirements and thus class membership is determined by statutory liability.  For example, the "**Main Class**" is determined by the failure of a repossession notice to contain the following:

> (i) The intended method of disposition (whether the vehicle would be sold at a public or private sale) and, in the case of a public sale, the time and place of the location of the disposition; or (ii) That the recipient was entitled to an accounting of the unpaid indebtedness and the charge for such accounting.

Compl. ¶ 40.  These requirements are taken directly from statutory requirements.  *See* 13 Pa. C.S. § 9613(1) (setting forth identical language to create statutory liability).

Membership in the "**Subclass**" is defined by a notice that fails to provide six categories of information including: (1) the aggregate amount of information; (2) the proceeds of the distribution; (3) the amount of obligation after deduction of the repossession process; (4) the amount of expenses; (5) the amount of credits; and (6) the final amount of the deficiency.  *See* Compl. ¶ 41.  Again, this is the same information set forth in § 9616.  *See* 13 Pa C.S. § 9616(c) (setting forth identical language to create statutory liability).

And, just like *Bell*, class membership is determined in reference to Plaintiff's own purportedly meritorious claim. Plaintiff seeks to represent a nationwide class of individuals who reside in states that have statutes "substantially similar in content" to the Pennsylvania UCC sections identified in the Complaint. *See* Compl. ¶ 40(c). But Plaintiff does not identify which states, or what characteristic should be quantified as "similar." This will necessarily result in individualized adjudication to determine if a class member's claim is similar to Plaintiff's claim.

In other words, because Plaintiff's class definition presumes a UCC violation similar to those he individually pleaded under 13 Pa. C.S. § 9613 or § 9616, adjudication of class membership is coextensive with ultimate liability. If a person received a notice that was deficient for the same reasons as Plaintiff, then he is a member of the class, and will participate in the purported class recovery. If, however, Plaintiff cannot meet his burden of proof, the class does not exist, the class members are not bound by final judgment, and are free to relitigate the same exact claims against the Bank. But this violates the due process protections afforded to the Bank under the Constitution and Rule 23. Furthermore, determining whether class member's claims under their state's UCC is "similar" to Plaintiff's Pennsylvania claim requires individualized adjudication. Accordingly, the fail-safe class definitions should be struck under Rule 23(d)(1)(D).

### D.   Plaintiff's Class Allegations Should Be Struck Because Individual State Law Issues Overwhelm Class-Wide Treatment.

On its face, Plaintiff's Complaint also fails under the predominance requirement of Rule 23(b)(3). *See* Compl. ¶¶ 33-39 (seeking certification under predominance). Under Rule 23(b)(3): (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly an efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Predominance cannot be met "where class members' claims would lead to disparate applications of legal rules, including

matters of causation, comparative fault, and the types of damages available to each plaintiff," or "proof of the essential elements of the cause of action requires individual treatment." *Trunzo*, 2014 WL 1317577, at *14 (internal quotations and citation omitted).  As explained above, Plaintiff lacks standing to assert a nationwide class action.  But even if standing was adequately alleged, state law variation overwhelms predominance of any class-wide issues.

### 1.    *States apply different legal standards to the question of liability.*

Regarding the Notice of Repossession, different states interpret the UCC in materially different ways.  For example, courts interpreting 13 Pa. C.S. § 9614 have concluded that pre-sale notices that have stated that collateral would be sold "at public or private sale" were sufficient to satisfy the UCC notice provision. *Fid. Consumer Disc. Co.*, 482 A.2d 580, 581 (Pa. Super. Ct. 1984) (notice satisfied Pennsylvania law because creditor "provided reasonable notice as to the time after which a private sale was to be made").  Additionally, Pennsylvania courts have approved notices despite clear factual errors so long as the notice adequately informed the debtor. *WesBanco Bank, Inc. v. Beattie*, 2017 WL 678836, at *5 (Pa. Super. Ct. Feb. 21, 2017).

Other states similarly perform fact-specific inquiries to determine whether the Notice of Repossession was sufficient. *Mountaineer Invs. LLC v. Heath*, 2011 WL 6038450, at *3 (Wash. Ct. App. 2011) (debtor received both a public auction and a private sale notice; notice was sufficient to permit the debtor to recover the property); *First Bank of Ohio v. Wigfield*, 2008 WL 747742, *4 (Ct. App. Ohio 2008) ("While the notice failed to specify whether the collateral would be sold at a public or private sale, the lack of specificity did not deprive defendant of his statutory right to protect his interest in the collateral: because no public sale occurred, the mere mention of its possibility did not harm defendant.").

*Colonial Pacific* illustrates this end of the spectrum.  There, the Repossession Notice indicated sale would occur via public auction; however, the vehicle was subsequently sold

privately.  The court dismissed on summary judgment holding the notice "is sufficient if it states, among other things, the method of **intended** disposition"—as opposed to the **actual** disposition. *Colonial Pac. v. N & N Partners, LLC*, 981 F.Supp.2d 1345, 1352 (N.D. Ga. 2013) (quoting O.C.G.A. § 11-9-613(1)(C)) (emphasis in original).  Despite the private sale, the notice was sufficient because the creditor's original intention was for a public sale, and the misstatement was a "minor error" and not "seriously misleading." *Id.*

On the other end of the spectrum, some states interpret the UCC provisions to require strict compliance. In these states, a notice that states that collateral will be sold at either public auction or private sale "lacks the specificity required by the UCC." *Show-Me Credit Union v. Mosely*, 541 S.W.3d 28, 31 (Mo. Ct. App. 2018); *see also Union Safe Deposit Bank v. Floyd*, 90 Cal.Rptr.2d 36, 37 (Cal. Ct. App. 1999), *as modified* (Nov. 3, 1999) ("[The] Bank's notice was defective in failing to state … whether the sale would be public or private … ."); *Peoples Heritage Sav. Bank v. Theriault*, 670 A.2d 1391, 1393–94 (Me. 1996) (collateral would "be disposed of by both public auction and private sale;" notice held confusing).

This interpretive variation is precisely why plaintiff bears a heavy burden "to credibly demonstrate through an extensive analysis of state law variances that class certification does not present insuperable obstacles." *Ford Motor Co.,* 174 F.R.D. at 341.  Because states interpret these UCC provisions in ways that are diametrically opposed, individual variation in state law regimes necessarily predominate over class-wide questions of liability. *See In re Amla Litig.*, 282 F. Supp. 3d 751, 762-63 (2d Cir. 2017) ("[I]mmense variation in state laws therefore makes individual questions predominate and renders the proposed class action unmanageable.").

Finally, even if the class was limited to Pennsylvania, class treatment of 13 Pa. C.S. § 9614 is not appropriate.  The fact-specific approach of Pennsylvania courts to the evaluation of

21

Repossession Notices requires analysis of each notice and the nature and timing of the subsequent sale to determine whether the debtor had sufficient notice and opportunity to redeem his collateral or to ensure that the sale was commercially reasonable. *See Fid. Consumer Disc. Co.*, 482 A.2d at 581; *WesBanco*, 2017 WL 678836, at *5.

### 2. *States apply different statutes of limitation.*

"Article 9 of the UCC does not contain a statute of limitations." *Cubler v. TruMark Fin. Credit Union*, 83 A.3d 235, 238 n.3 (Pa. Super. Ct. 2013). Accordingly, determination of the statute of limitations for purported class members requires application of generally applicable state law. *See id.* In Pennsylvania, 13 Pa. C.S. § 9625 is subject to a six-year statute of limitations, because it is compensatory and not punitive. *Id.* at 241.

But not all states apply a six-year statute to the codification of UCC § 9-625. Virginia applies a two-year statute of limitations. *Leggat v. Equifax Info. Servs., Inc.*, 2009 WL 2432371, at *2 (E.D. Va. Aug. 6, 2009) ("Because … Virginia's version of Article 9 of the U.C.C., does not contain a specific time limitation for bringing an action for liability, Virginia law applies a 'catch all' two-year statute of limitations."). In Tennessee, a one-year statute of limitations applies. *Beard v. Vanderbilt Mortg. & Fin., Inc.*, 2008 WL 2323235, at *5 (M.D. Tenn. June 2, 2008) (concluding that Tennessee courts treat the state's codification of UCC § 9-625 as a "statutory penalty" and therefore the one-year statute of limitations applies). After federal courts in Missouri concluded that a five-year statute of limitations applied to claims like Plaintiff's, the Eighth Circuit held that the applicable Missouri limitation is either five or three years. *Huffman v. Credit Union of Tex.*, 2011 WL 5008309, at *5 (W.D. Mo. Oct. 20, 2011) (holding that "Missouri's codification of section 9–625 of the UCC is not a penal statute" and claims must therefore be filed within five years); *Huffman v. Credit Union of Tex.*, 758 F.3d 963, 966 (8th Cir. 2014) (affirming district court on the ground that the claims were time-barred by either a three- or five-year statute of limitations,

and noting that the Missouri Supreme Court declined to answer an Eighth Circuit panel's certified question on the matter).

Moreover, where the applicable statute of limitations is not settled, this Court must anticipate how a state supreme court would make such a determination in the first instance. *See id.* at 966. But engaging in the "perilous business" of *Erie* predictions in multiple states renders a class action inefficient and unmanageable. *See Nelson v. State Farm Mut. Auto Ins. Co.*, 988 F. Supp. 527, 529 n.5 (E.D. Pa. 1997) ("*Erie* predictions are perilous business."); *Porcell v. Lincoln Wood Prods., Inc.*, 713 F. Supp. 2d 1305, 1325 (D.N.M. 2010) (state law variation required *Erie* predictions in multiple states; individual issues predominated over class-wide claims).

Because there is no consistent statute of limitations for claims among the UCC of various states, this variation renders a nationwide class inappropriate. Evaluation of the limitations period (which is Plaintiff's burden to provide) would require a 50-state analysis for UCC § 9-625, determining whether § 9-625 was penal or compensatory in nature under that state's law, and if no state decision was on point, an *Erie* analysis by this Court. No amount of discovery could alter this lack of predominance in a nationwide class.

### 3. *Individual damages issues overwhelm class issues.*

Class treatment is inappropriate when the claims "require highly individualized proofs as to the injuries suffered by the putative class members." *Harper v. Trans Union, LLC*, 2006 WL 3762035, at *8 (E.D. Pa. Dec. 20, 2006). Accordingly, Pennsylvania courts hold that predominance is not satisfied when issues of liability and damages require individualized determinations. *Newton v. Merrill Lynch*, 259 F. 3d 154, 187-88 (3d Cir. 2001) (no predominance where individualized inquiry was required to prove each class member suffered injury or to calculating damages); *Davis v. Bank of Am.*, 2016 WL 427049, at *6-7 (E.D. Penn. Feb. 3, 2016) (granting motion to strike; predominance not satisfied because court "would need to conduct 'mini-

hearings' for each putative plaintiff's claim to resolve the issues of loss, the amount of the actual loss, and damages"); *Harper*, 2006 WL 3762035, at *8-9 (predominance not satisfied because "[a]t the very least, plaintiff would have to canvass the records of each member of the putative class to determine the nature of the injury, if any, sustained"); *Lester v. Percudani*, 217 F.R.D. 345, 352 (M.D. Pa. 2003) ("Regardless of similarity in the nature of alleged harm, each claimant will inevitably need to provide proof that his or her damages resulted from his or her own transaction, a conclusion that demonstrates the predominance of individual, not common, issues.").

For instance, Judge Mitchell concluded that class treatment of improper loan practices was inappropriate where plaintiff's claims required "individualized determination of each loan modification agreement and its provisions." *Glover v. Udren*, 2013 WL 6237990, at *19 (W.D. Pa. Dec. 3. 2013). Even though the loan agreements were form documents, the court "ha[d] difficultly believing" that all the loans were identical. *Id.* To determine damages, a review of individual transaction history was needed to confirm if payments were made, if they were timely, and if the bank correctly applied the payment. Accordingly, common issues could not predominate. *Id.*

To prove the alleged UCC claims, Plaintiff must establish that the notices sent violated the UCC under 50 different state court interpretations, and numerous statutes of limitation. In addition, under Pennsylvania's UCC, a consumer is entitled to the greater of the following damages: (i) actual damages for statutory noncompliance, or (ii) "the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price." 13 PA C.A. §§ 9625(b), (c)(1), (c)(2); *see also* Compl. ¶ 36. As such, individual factual analysis is required to determine damages and thus is not suitable for class treatment.

In fact, the Complaint notes an array of actual damages possibly suffered by class members. Compl. ¶ 37 (ranging from "unlawful and inflated fees" to "vehicles which were invalidly sold"). But determining actual damages requires specific inquiry into individual facts; in turn, one must perform a case-by-case comparison to determine the greater of actual or statutory damages.  The leading UCC treatise recognizes that § 9-625 claims do not support class treatment:

> [T]hese cases [do not] make particularly good candidates for class actions.  Typically, each case rests upon its own facts, its own mode of sale, its own notice, and its own circumstances of resale.  Thus, it is hard to make a case for a class action, for such an action must involve the same or similar circumstances with respect to each member of the class.

4 White, Summers, & Hillman, Uniform Commercial Code § 34:42 (6th ed.).

Here, the individual analysis required to determine liability and damages "would be an unconscionable use of the court's time" and thus "makes [this] case unsuitable for class treatment." *Glover*, 2013 WL 6237990, at *21.  Accordingly, the Court should strike Plaintiff's class allegations.

## VI.     <u>CONCLUSION</u>

For these reasons, this Court should grant this Motion.

Respectfully submitted,

/s/ Albert G. Lin
Albert G. Lin (admitted *pro hac vice*)
Marissa A. Peirsol (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Tel: (614) 228-1541
Fax: (614) 462-2616
alin@bakerlaw.com
mpeirsol@bakerlaw.com

*Attorneys for Defendant Nationwide Bank*

4814-5247-1427.19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Albert G. Lin*
Albert G. Lin

26