# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA HUGHES, ET AL.,<br><br>      Plaintiff,<br><br>    v.<br><br>NATIONWIDE BANK,<br><br>      Defendant. | Civil Action No.: 2:18-cv-01235-MRH<br><br>Judge Mark R. Hornak |

**DEFENDANT NATIONWIDE BANK'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DETERMINE CHOICE OF LAW**

          Albert G. Lin (*admitted pro hac vice*)
          Marissa A. Peirsol (*admitted pro hac vice*)
          BAKER & HOSTETLER LLP
          200 Civic Center Drive
          Suite 1200
          Columbus, Ohio 43215
          Tel: (614) 462-4732; Fax: (614) 462-2616
          alin@bakerlaw.com
          mpeirsol@bakerlaw.com

          *Attorneys for Defendant Nationwide Bank*

I.     **INTRODUCTION**

In the operative Complaint, Hughes claims that the Bank's repossession notices violated Pennsylvania UCC sections 13 Pa. CSA § 9613 (Repossession Notice) and 13 Pa. CSA § 9616 (Post-Sale Notice). Hughes seeks to represent a nationwide class where claims under each state's respective UCC are "substantially similar" to Pennsylvania law. Compl. at ¶ 40 [dkt.1]. The Bank moved to dismiss or strike the class allegations, among other relief, arguing Hughes lacked standing to assert non-Pennsylvania claims, and state variations of the UCC precluded a nationwide class. Bank's 12(c) Mot.[1] [dkt.31]. The parties stipulated Hughes could oppose the Rule 12(c) Motion by March 7, 2019. Order [dkt.37].

Instead of responding, Hughes requested this Court to declare Ohio law applies to the claims and allegations presented in future complaints. Pls. COL Mot.[2] [dkt.39]. Hughes also requested that the Bank's 12(c) Motion be held in abeyance, until choice-of-law is settled. *See id.* Days later, Hughes moved for a continuance to file a new complaint. The Court denied the continuance and ordered that a motion for leave to amend be filed on March 18, 2019. Pls. Mot. Cont. [dkt.41]; Order [dkt.43]. In these serial filings, Hughes seeks to avoid the problems of standing and state law variation by applying Ohio law to the nationwide class. *See* Pls. COL Mot. 14. This Motion is procedurally and substantively improper and should be denied.

II.    **ARGUMENT**

    A.     **Plaintiff's Motion Is Procedurally Improper And Should Be Denied.**

Plaintiff's Motion is procedurally improper for multiple reasons. **First**, plaintiff is **master of the complaint** and decides the law to rely upon in seeking relief. *Fair v. Kohler Die & Spec. Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide

---

[1] Bank's Br. Supp. R.12(c) Mot. Par. J. Plds. & R.23(d) Mot. Strike Class Allegs. [dkt. 31]("Bank's 12(c) Mot.").
[2] Br. Supp. Pls. Mot. To Determine Choice of Law [dkt. 39] ("Pls. COL Mot.").

what law he will rely upon.") (Holmes, J.) (emphasis added).  By choosing the allegations, plaintiff can eschew a federal forum or avoid state law claims—and litigate a case on his own terms.  *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) (no federal claims pleaded; federal court avoided); *Colon v. Mtn. Creek Waterpark*, 2009 WL 3172862, at *3 (D.N.J. Sept. 30, 2009) (adjudication limited to state claims actually alleged in Complaint).  But with this initial choice, Plaintiff cannot assert claims outside the Complaint, and cannot raise new allegations in a brief.  *Pa. ex rel Zimmerman v. PepsiCo,* 836 F.2d 173, 181 (3d Cir. 1988) ("it is axiomatic that the complaint may not be amended by the briefs"); *Mayon v. Wetzel*, 2017 WL 1211626, at *3 (W.D. Pa. April 3, 2017) (court cannot consider unpleaded allegations).

**Second**, Plaintiff cannot assert Ohio claims through **constructive amendment**, as the Bank objects to adjudication of unpleaded claims.  "The function of a complaint is to give defendants fair notice of plaintiff's claims and the grounds on which they rest … ."  *McCree v. SEPTA*, 2009 WL 166660, at *9 (E.D. Pa. Jan. 22, 2009) (internal quotation omitted).  With a constructive amendment, courts may address unpleaded claims only if a party gives "express or implied consent," and the unpleaded claim is "squarely presented and foisting no surprise."  *Id.*; Fed. R. Civ. P. 15(b).  If there is an objection, unpleaded claims cannot be adjudicated.  *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (objection to unpleaded claim; reversing adjudication of constructive amendment); *Schultz v. Cally*, 528 F.2d 470, 474-75 (3d Cir. 1975) (constructive amendment impermissible where doubt existed as to defendant's agreement).

**Third**, federal courts cannot render **advisory opinions** on unpleaded claims.  Courts adjudicate actual "cases or controversies," and do not advise "what the law would be on a hypothetical state of facts."  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  This constitutional precept applies where plaintiff seeks a ruling on claims not properly before the court.  *Benson v.*

3

*Smith,* 1993 WL 311238, at *2 (E.D. Pa. Aug. 12, 1993) (request was nonjusticiable advisory opinion; sought a ruling if state action resulted in property loss); *Colon*, 2009 WL 3172862, at *3 (court cannot address unpleaded state product liability claim); *In re Trichilo*, 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015) (court may not "render any advisory opinion" on unpleaded claims).

These principles require denial of the Choice-of-Law Motion. As pleaded, Hughes's individual claim arises under Pennsylvania law; and the purported class claims are defined in reference to the Pennsylvania UCC. Compl. ¶ 19-39 (individual claims under Pa. UCC); *id.* ¶ 40-41 (class claims refer to Pa. UCC). The alleged facts also support the application of Pennsylvania law. *Id.* ¶ 16-18 (Pennsylvania is where Hughes resides, the vehicle was repossessed, and the Bank does business). Hughes even admits Pennsylvania law applies: "**Plaintiff refers to Pennsylvania citations in this Complaint because his claims fall under the Pennsylvania UCC.**" *Id.* ¶ 20 n.1 (emphasis added).

Despite these judicial admissions, Plaintiff asks this Court to recast his suit under Ohio law. But the Bank objects to this constructive amendment. Even passing that fact, myriad practical problems abound. Ohio law cannot apply to a Pennsylvania statutory claim. Choice-of-law principles require claim-by-claim application. Without an operative Complaint alleging new facts and causes of action, there is nothing to apply choice-of-law principles to. Such a hypothetical analysis is a request for an advisory opinion and should be denied.

      **B.**      **The Contract Terms Require The Choice Of Pennsylvania Law.**

Plaintiff seeks leave to file an amended complaint[3] to avoid these procedural errors. But even if leave is granted and the claims are recast under Ohio law, Pennsylvania law still applies.

---

[3] The Bank reserves the right to oppose the motion for leave to amend in order to apply this choice-of-law analysis to the as-yet-unpleaded claims.

4

4835-8770-9321.7

"Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.,* 40 F.3d 52, 55 (3d Cir. 1994).  Here, the contract terms determine choice of law for repossession:

> **Governing Law**.  This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Ohio, except and only to the extent of **procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Property**, which **will be governed by the laws of** the Commonwealth of **Pennsylvania**.

Consumer Security Agreement ("CSA") at 2, Compl. Ex. B [dkt.1-2].  The CSA defines words and phrases to ensure the terms are unambiguous.  "Property" is defined as Hughes's vehicle, and "Lender" is defined as the Bank.  *Id*.  The "perfection and enforcement of Lender's rights and remedies" is also defined, and made subject to the procedural requirements of the UCC:

> **LENDER'S RIGHTS**.  I may keep and use the Property so long as I am not in default under this Agreement.  If I am in default, this is what Lender may do, in addition to any other rights Lender may have:
>
> **Other Rights and Remedies**.  In addition, **Lender** will have all the rights of a **secured party under the Uniform Commercial Code** and other applicable law.  This means, among other rights, that **Lender may** enter upon the premises at the address shown above and **take the Property** peaceably **and sell it**.  **Lender may also**, to the extent permitted by law, enter peaceably upon other premises for the purpose of **retaking the Property**, and I consent to such entry … .
>
> **Application of Proceeds**.  If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amounts owed Lender.  "Net proceeds" means the sale price less the expenses of **repossession**, repair, sale, and as provided below, reasonable attorneys fees and other collection expenses.

*Id.*at 2 (emphasis added).  The CSA includes procedural notice requirements relating to the enforcement of Lender's rights:

> **Notice.** … Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of any property is to be made.  The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

*Id.* at 2 (emphasis added).

These terms require the choice of Pennsylvania law.  In short, the CSA defines the "perfection and enforcement of Lender's rights and remedies" as the act of repossession of a security interest under the UCC.  The security interest—"the Property"—is defined as Hughes's car.  The "procedural matters" relating to "perfection and enforcement" refers to the application of Lender's rights under the UCC for repossession and the notice requirements spelled out in the contract.  Accordingly, the repossession of Hughes's car is "governed by the laws of the Commonwealth of Pennsylvania"—namely the Pennsylvania UCC.  Indeed, this is why Plaintiff admitted that Pennsylvania law applies to the UCC claims in his initial Complaint.  *See* Compl. ¶ 20 n.1  Accordingly, this Court should deny the Motion.

        **C.**      <u>**Contract Interpretation Rules Require The Choice Of Pennsylvania Law.**</u>

This reading is consistent with the rules of contract interpretation adopted by Pennsylvania and Ohio.  Both states note that a "fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties." *Mace v. Atl. Ref. Mktg. Corp.*, 567 Pa. 71, 80 (2001); *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St. 2d 244, 247 (1974) ("contracts are to be interpreted so as to carry out the intent of the parties …."). Each note that the parties' intent in a "written contract is contained in the writing itself." *Shovel Tr. & Stor., Inc. v. Pa. Liq. Cont. Bd.*, 559 Pa. 56, 65 (1999); *Lutz v. Chesapeake Appalachia, LLC*, 148 Ohio St. 3d 524, 526 (2016) (same).  When the "words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Mace*, 567 Pa. at 80 (2001); *Transtar Elec. v. AEM Elec. Servs. Corp.,* 140 Ohio St. 3d 193, 196 (2014) ("When the language of a written contract is clear, a court may look no further than the writing itself ….").

Critically, contract interpretation in both states require that "all provisions in the agreement will be construed together and each will be given effect." *LJL Transp., Inc. v. Pilot*

*Air Freight Corp.*, 599 Pa. 546, 559–60 (2009); *Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 408 (2011) ("In interpreting a contract, we are required, if possible, to give effect to every provision of the contract."). Pennsylvania and Ohio courts "will not interpret one provision of a contract in a manner which results in another portion being annulled." *Lesko v. Frankford Hosp.-Bucks Cty.*, 609 Pa. 115, 123 (2011); *Foster Wheeler Enviresponse, Inc. v. Franklin Cty.,* 78 Ohio St. 3d 353, 362 (1997) ("If one construction … would make [a clause] meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.").

Despite these rules of construction, Plaintiff argues that the contract requires the application of the Ohio UCC to Hughes's individual claim and every absentee class member on a nationwide basis. Pl.'s COL Mot. at 11. But this renders many of the CSA terms surplusage and distorts the common meaning of words and phrases.

**First**, Plaintiff argues that the first sentence of the CSA's Governing Law provision generally requires the application of Ohio law. Pl.'s COL Mot. at 2. While true, the second part of that first sentence **also** requires the application of **Pennsylvania law** to the "perfection and enforcement of Lender's rights and remedies." CSA at 2.

**Second**, Plaintiff argues that under the Pennsylvania UCC, "perfection" in the Governing Law provision relates only to the priority of payment and does not relate to repossession. Pl.'s COL Mot. at 12. As detailed below, this is wrong; perfection under the UCC is necessarily connected to the concepts of a security interest, attachment, enforcement, and default. And focusing on "perfection" impermissibly renders the next word—"enforcement"—meaningless.

**Third,** Plaintiff ignores the plain meaning of the word "enforcement," defined as the "act or process of compelling compliance with [an] … agreement." Black's Law Dictionary (2014,

7

Westlaw edition).  Here, "enforcement" is naturally understood as the act of enforcing Lender's rights in the Property granted through the CSA and UCC—namely through repossession.

**Fourth**, Plaintiff's reading renders the entire "Lender's Rights" section of the CSA as surplusage.  To be clear, the "Lender's Rights" section: is five paragraphs long; notes the Lender has the rights of a secured party under the UCC; that such rights include repossession of the Property; and that the Lender is subject to procedural requirements, like peaceable entry and notice to the debtor.  CSA at 2.  The Governing Law term then makes clear that Pennsylvania law must be applied to matters relating to these "Lender's Rights"—like repossession.

Not surprisingly, courts analyzing contracts under Ohio and Pennsylvania law do not permit rendering contractual terms surplusage, especially when a different reading gives every term meaning.  *See LJL Transp.*, 599 Pa. at 566-67 (multiple termination provisions must be read in concert so that each is given effect); *Sunoco*, 129 Ohio St. 3d at 408 (government's interpretation rendered most-favored-nation clause surplusage; Ohio S.Ct. harmonized terms to give clause meaning); *Lesko*, 609 Pa. at 125-26 (harmonizing compensation terms so they are not inconsistent); *Foster Wheeler,* 78 Ohio St. 3d at 363 (contract cannot be interpreted so that terms are annulled); *see also Kruzits*, 40 F.3d at 55-56 ) (interpreting choice of law provision to give it effect).  Accordingly, this Court should deny the Motion.

    **D.**     **The Pennsylvania UCC And The Contractual Terms Use Identical Language And Require The Choice Of Pennsylvania Law.**

Plaintiff claims that the choice of Pennsylvania law in the contract cannot apply to repossession, because "perfection" relates only to "priority of the holder of a perfected security interest in goods against subsequent purchasers."  Pl.'s COL Mot. at 12.  But this is wrong.  Both the Pennsylvania UCC and the CSA use the terms "perfection and enforcement" in identical ways, and both require the application of Pennsylvania law.

8

The Pennsylvania UCC defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." 13 Pa. CSA § 1201(b)(35). Division Nine of the Pennsylvania UCC (Article 9 of the Model UCC), sets forth a comprehensive statutory regime governing secured transactions that involve these security interests. 13 Pa. CSA § 9101 *et seq*. Procedures for secured transactions are laid out in serial sections of Division Nine, and include attachment, perfection, and enforcement.

- **Attachment**—the act by which a lender or obligor connects a security interest to both the collateral (personal property) and the obligation (a loan). 13 Pa. CSA § 9203(a).
- **Perfection**—the process of validating an attachment providing notice to others of the obligor's (lender's) security interest in the collateral. 13 Pa. CSA § 9301 *et seq*.
- **Enforcement**—the act by which the secured party exercises its rights to the security interest attached and perfected against the collateral, usually because the debtor has defaulted on the loan. 13 Pa. CSA § 9203(b).

The particular procedures for attachment, perfection, and enforcement depend on the particular type of property. For example, a security interest attaches to a car when "value has been given, the debtor has rights in the collateral and the debtor authenticated a security agreement that has a description of the collateral or the creditor has taken possession of the collateral." *In re Dean*, 2012 WL 4634291, at *3 (Bankr. M.D. Pa. Oct. 1, 2012) (citing 13 Pa.CSA § 9203(b)). Perfection of a security interest attached against a car titled in Pennsylvania must occur under Pennsylvania law. 13 Pa. CSA § 9303 (requiring application of Pennsylvania law to perfection for property with a certificate of title). In short, the car title must contain "a notation of security interest with the [Pennsylvania] Department of Transportation" pursuant to the Motor Vehicle Code. *KDG Auto Sales, Inc. v. Asta Funding, Inc.*, 781 A.2d 202, 204 n. 4 (Pa. Super. 2001); *In re Dean*, 2012 WL 4634291, at *3. A lender with a perfected security interest can then enforce his interest after the debtor's default in a variety of ways. These enforcement procedures are laid out in subsequent sections of Division Nine, 13 Pa. CSA § 9601,

4835-8770-9321.7

*et seq.*, and include repossession.  13 Pa. CSA §§ 9613-16.  Furthermore, the enforcement procedures specifically incorporate perfection and priority of payment.  13 Pa. CSA §§ 9611 (requiring notification of perfected interest during enforcement).

Pennsylvania case law similarly recognizes the interdependent nature of attachment, perfection, enforcement, and repossession.  *See In re Barry*, 559 B.R. 654, 661 (Bankr. M.D. Pa. 2016) ("[P]erfection of a security interest first requires attachment."); *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 240 (M.D.Pa. 2004) ("Without attachment, there can be no perfection."); *In re Dean*, 2012 WL 4634291, at *3 (noting "possession is an alternative method by which an enforceable security interest may be created and attach"); *Chambersburg Tr. Co. v. Eichelberger*, 403 Pa. Super. 199, 207 (1991) ("For most types of property, filing the agreement and taking possession are alternative methods of perfection of a security interest."); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 147 (3d Cir. 2016) ("Pennsylvania law expressly permits a secured party to take possession of the collateral … without judicial process if it proceeds without breach of the peace.").

The contractual terms of the CSA mimic the Pennsylvania UCC.  The CSA "Lender Rights" section specifically notes that the Bank's **contractual rights** are coextensive with its **UCC rights**.  This includes the Bank's right to enforce its perfected security interest by enforcement procedures under the UCC, including repossession.  CSA at 2.

Plaintiff's argument that Pennsylvania law applies only to perfection, but Ohio law applies to every other procedure under the UCC, is not coherent.  Attachment, perfection, and enforcement are all concepts connected to a single security interest.  Enforcement procedures against the property specifically incorporate and rely upon perfection and attachment.  Accordingly, this Court should deny the motion.

E.     **Choice-Of-Law Principles Indicate Pennsylvania Law Applies To Plaintiff's Claims.**

Even if the contractual terms do not apply, choice-of-law principles indicate Pennsylvania law should still govern Plaintiff's claims. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Kruzits*, 40 F.3d at 55. Therefore, Pennsylvania choice-of-law rules govern.

"Pennsylvania uses a 'hybrid' choice of law approach that combines the 'governmental interest analysis' with the Second Restatement of Conflict's 'most significant relationship' test." *Panthera Rail Car LLC v. Kasgro Rail Corp.,* 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 22-23 (1964); *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991). The first step is to "determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, i.e., whether there is a conflict." *Id*. If there is no relevant difference, "then there is no conflict at all, and a choice of law analysis is unnecessary." *Panthera*, 985 F. Supp. 2d at 696. (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir.2006) ("the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.").

If there is a relevant difference between the two jurisdictions, the Court "must examine the interests and policies underlying the law of each jurisdiction and determine whether the conflict is 'true,' 'false,' or 'unprovided for.'" *Panthera*, 985 F. Supp. 2d at 696. Only if there is a "true" conflict—if both jurisdictions' interests would be impaired by the application of the other's laws—must the Court "determine which state has the greater interest in the application of its law." *Id.* (quoting *Pac. Emp. Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 436 (3d Cir. 2012)). The Court determines this by "weigh[ing] each state's contacts on a qualitative

11

scale according to their relation to the policies and interests underlying the particular issue." *Id.* Factors in making this determination include those "set out in the Second Restatement of Conflicts." *Panthera*, 985 F. Supp. 2d at 700.

        1.      *An actual conflict between Ohio and Pennsylvania law exists.*

Plaintiff alleges two causes of action, both regarding the statutory notice requirements of the UCC. Plaintiff pleads violations of the relevant Pennsylvania UCC statute, 13 Pa. C.S.A. §§ 9613-16. The relevant Ohio UCC statute is ORC §§ 1309.613-16. Although these statutes are nearly the same, Ohio and Pennsylvania have differed in interpreting these notice requirements.

Pennsylvania courts have interpreted 13 Pa. C.S.A. § 9614 to be satisfied when a repossession notice stated collateral would be sold "at public or private sale." *Fid. Consumer Disc. Co. v. Clark*, 482 A.2d 580, 583 (Pa. Super. Ct. 1984) (notice satisfied Pennsylvania law because creditor "provided reasonable notice as to the time after which a private sale was to be made"). Ohio courts have conflicting authority regarding how stringently ORC § 1309.614 should be interpreted. *Compare First Bank of Ohio v. Wigfield*, 2008 WL 747742, *4 (Ct. App. Ohio 2008) (collateral sold at private sale; no violation though notice failed to specify whether sale would be public or private) *with Liberty Nat. Bank of Fremont v. Greiner,* 62 Ohio App. 2d 125, 128-29 (Ohio Ct. App. 1978) (notice that included information about a public sale is "inherently misleading" and did not constitute proper notice of a "private sale"). Because Pennsylvania and Ohio courts interpret the relevant UCC provision differently, an actual conflict exists between the states. *McDonald v. Whitewater Chall., Inc.*, 116 A.3d 99, 106 (2015) ("actual conflict" where "relevant differences exist" between state law).

12

>   2.   *No true conflict exists because only Pennsylvania has an interest in having its laws applied.*

"A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932 F.2d at 187. "The purpose of [the UCC-required] notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser or to see that the sale is conducted in a commercially reasonable manner." 4 White, Summers, & Hillman, Uniform Commercial Code § 34:30 (6th ed.). Accordingly, Pennsylvania has an interest because both the debtor and collateral reside there. Though their jurisprudence may differ, each state's UCC statutes share the same purpose of providing notice to the debtor. Applying Pennsylvania law will not impair Ohio's statutory purpose because notice must be provided.

Because Ohio's interests will not be impaired, this is a false conflict, and Pennsylvania law applies. *Compare Lacey*, 932 F.2d at 187 (holding that where a false conflict exists, "the court must apply the law of the state whose interests would be harmed if its law were not applied.") *with McDonald*, 116 A.3d at 109 ("[T]he fact that [plaintiff] is a resident of New York, which has adopted a plaintiff-protecting rule, and [defendant] is a resident of Pennsylvania, which has adopted a defendant-protecting rule, demonstrates a true conflict.").

>   3.   *Pennsylvania has the greater interest in having its laws applied.*

Even if Ohio's interests would be impaired if Pennsylvania law applies, application of choice-of-law principles still produces the same result: application of Pennsylvania law. "Pennsylvania courts, adopting the approach of the Restatement (Second) of Conflict of Laws, consider the following contracts relevant to determining the appropriate choice of law in an action for breach of contract: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and

13

(5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Toll v. Tannenbaum,* 982 F. Supp. 2d 541, 550 (E.D. Pa. 2013), *aff'd*, 596 F. App'x 108 (3d Cir. 2014); *see also* Restatement (2d) of Conflicts of Law § 188(2) (1971).

The place of contracting (where debtor accepted the contract) and performance weigh in favor of Pennsylvania because Plaintiff purchased and refinanced his vehicle in Pennsylvania. *Howard Sav. Bank v. Cohen*, 414 Pa. Super. 555, 563 (1992) ("Generally, absent a choice of law provision in the contract, a contract is governed by the law of the state in which the contract is signed."). The vehicle, the subject matter of the contract, was maintained by Plaintiff in Pennsylvania, weighing in favor of Pennsylvania. As for domicile, Plaintiff resides in Pennsylvania and the Bank is located in Ohio. Considering these factors together, application of Restatement § 188 favors applying Pennsylvania law. *Powers v. Lycoming Engines,* 272 F.R.D. 414, 423 (E.D. Pa. 2011) ("[w]eighing the contacts on a qualitative scale," the state where the plane was purchased had the most significant relationship with the contract).

Consideration of the factors outlined in § 6 of the Restatement, which are also applicable, does not change the outcome. *See* Restatement (2d) of Conflict of Laws § 6; *see Hammersmith*, 480 F.3d at 235; *Toll*, 982 F. Supp. 2d at 550. First, the needs of interstate and international systems are not affected, so this factor does not demonstrate a greater interest of either state. The relevant policies in Pennsylvania and Ohio, namely the notice requirements under each state's UCC, do not differ so greatly that this factor weighs heavily on either side. Both states have a policy interest, expressed in statute, of requiring notice to debtors prior to sale of collateral.

However, Pennsylvania's interest in this enforcement outweighs Ohio's interest because the debtor resides in Pennsylvania. The parties also agreed via contract, that the issues related to the procedural notice and repossession requirements would be litigated under Pennsylvania law.

14

And Plaintiff has conducted the entire transaction from Pennsylvania, sued in Pennsylvania, alleged Pennsylvania statutory violations—indicating he expected Pennsylvania law to apply.

Furthermore, the UCC of a given state generally "applies to transactions bearing an appropriate relation to this state." 13 Pa. C.S.A. § 1301; ORC 1301.301; *see also* UCC § 9-303(c) (location where a certificate of title for goods was filed—like a car—governs perfection and priority of security interests); UCC § 9-301 (local law of jurisdiction where debtor is located governs perfection, effect of perfection, and priority of security interests); *see also* Compl. ¶¶ 6-10 (admitting car was purchased, financed, and refinanced in Pennsylvania). Because the transaction between the Bank and Plaintiff bear a relation to Pennsylvania where the debtor and collateral reside, Pennsylvania law should apply. The Restatement § 6 goal of certainty, predictability and uniformity is served by application of Pennsylvania law to this debtor—as it would in other cases. And the application of Pennsylvania law in a Pennsylvania federal district court provides relative ease.

For all of these reasons, Pennsylvania has the greater interest in having its law applied, and Pennsylvania law should govern this dispute. *Chestnut v. Ped. Homecare of Am., Inc.*, 420 Pa. Super. 598, 605 (1992) (applying Pennsylvania law where "performance, contracting, location of the subject matter and . . . residence were all in Pennsylvania."); *Hammersmith*, 480 F.3d at 235 (applying state law with "the most significant relationship" to the contract and the "greatest governmental interest").[4]

### III. **CONCLUSION.**

For these reasons, Pennsylvania law applies, and this Court should deny the Motion.

---

[4] Plaintiff's block quote from *Atlantic Marine Constr. Co. v. U.S. D.Ct. W.D. Tex.*, 571 U.S. 49, 63-68 (2013) is not applicable here because it concerns forum selection, not choice-of-law. Here, Plaintiff moves to determine which state law governs, not which forum is appropriate. As such, Plaintiff's citations to *Atlantic Marine* are inapposite.

Respectfully submitted,

*/s/ Albert G. Lin*
Albert G. Lin (*admitted pro hac vice*)
Marissa A. Peirsol (*admitted pro hac vice*)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Tel: (614) 228-1541
Fax: (614) 462-2616
alin@bakerlaw.com
mpeirsol@bakerlaw.com

*Attorneys for Defendant Nationwide Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Albert G. Lin*
Albert G. Lin

4835-8770-9321.7